BERNARD CASSERLY, as Receiver of the New Amsterdam Fire Insurance Company, Respondent, v. DAVID S. MANNERS and others, Appellants.

*Insurance companies — preferences in contemplation of insolvency — 2 R. S. [5th ed.], 526, § 54 — id., 519, §§ 9, 10 — Motive of directors immaterial — Damages.*

An insurance company, incorporated under the general laws of this State relating thereto, became involved in consequence of heavy losses sustained in the Chicago fire. Subsequently a resolution was adopted directing the reinsurance of all policies issued from its home office, not including agency policies, until such time as a satisfactory adjustment of its Chicago losses could be made, and such reinsurance was accordingly effected by the payment of $40,000 to the company reinsuring said policies. At the time of this agreement the company was in fact insolvent, although this was not then known to the directors. *Held*, that such reinsurance was a violation of the provisions of the Revised Statutes (2 R. S. [5th ed.], 519, §§ 9, 10) prohibiting the transfer of the effects of a corporation in contemplation of insolvency, with intent to give a preference to any particular creditor, and that the directors of the company were personally liable to the holders of policies not covered by such reinsurance, to the extent of the loss sustained by them in consequence thereof.

The defendants insisted that the action could not be maintained for the reason that the contract for reinsurance was void, because made with a New Jersey corporation, which had not complied with the laws of this State so as to entitle it to transact business within it.

*Held*, that as the New Jersey company had fully executed and performed the agreement on its part, by paying all losses arising on risks reinsured by it, this defense was properly overruled.

*Held*, further, that the fact that the directors, in contemplation of the company's insolvency, entered into the agreement in good faith, under the belief that they were acting for the best interests of the corporation, and that neither the policyholders nor creditors would be prejudiced thereby, did not relieve them from their statutory liability.

In an action by the receiver of the insolvent corporation against the directors thereof to enforce the liability imposed upon them by the statute, *held*, that there should be deducted from the $40,000 paid for reinsurance, the sum which the receiver would have been obliged to pay to the holders of the reinsured policies under which losses had occurred.

APPEAL from a judgment in favor of the plaintiff, entered on the trial of this action at Special Term.

*Joshua M. Van Cott,* for the appellant.

*Wheeler H. Peckham,* for the respondent.

DANIELS, J. :

The plaintiff instituted and prosecuted this action as receiver of the New Amsterdam Insurance Company, which was incorporated under the laws of this State in the month of April, 1852. By one of the provisions of the statute relating to insurance companies, incorporated by virtue of its enactment, it was empowered to make reinsurance of any of the risks taken by it, and particularly upon any or all the risks mentioned in the first section of the act. (2 R. S. [5th ed.], 743, § 2.) But at the same time it was rendered subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same should be applicable to it. (Id., 749, § 18.) And that made it subject to the disabilities and obligations created by the statute relating to moneyed corporations, for corporations authorized by law to make insurance, are declared to be included within that class. (Id., 526, § 54.) By one of the sections in that manner made applicable to these corporations, it has been provided that no conveyance, assignment or transfer of any of its real estate or effects, nor any payment made, judgment suffered, lien created or security given by any such corporation, when insolvent or in contemplation of insolvency, with the intent of giving a preference to any particular creditor over other creditors of the company, shall be valid in law, " and every director who shall violate or be concerned in violating any provision" contained in that section, " shall be liable personally to the creditors and stockholders respectively, of the corporation of which he shall be a director to the full extent of any loss they may respectively sustain from such violation." (2 R. S. [5th ed.], 519, §§ 9, 10.) The defendants in this action were directors of this insurance company, and it was for an alleged violation of the prohibitions of the ninth section of this statute that the judgment in it was recovered against them. The corporation was involved in heavy losses by the fire in Chicago, which occurred in the early part of October, 1871; and on the twenty-sixth of that month a resolution was adopted by its directors, which authorized and directed its officers to reinsure all the policies taken at and issued from its own office, not including agency policies, until such time as a satisfactory adjustment of its Chicago losses could be made, and that for that purpose the sum of $40,000 should be paid as the estimated amount required for the reinsur-

ance to the Home Insurance Company of New Jersey, by which it was expected to be made. And if the amount should be deficient, or exceed what was required for that purpose, the deficiency was to be paid by, or the excess returned to, the New Amsterdam Fire Insurance Company. On the following day, at Jersey City, the Home Insurance Company adopted a resolution accepting the proposal mentioned, for the sum to be appropriated for that purpose, and subject to its rectification in the manner provided by the directors of the other company if the amount should prove too great or too small ; and the reinsurance was made in accordance with that agreement. It was for appropriating this amount of the money of the company for that object, that the defendants were held liable in this action. It was deemed to be a preference in favor of the persons who had received their policies from the local office of the New Amsterdam Insurance Company, and against those who had received their policies from its agencies, which included the risks taken in Chicago.

It has been urged that if this view should not be sustained by the provision which the statute has made, that still the judgment must be affirmed, because the officers and directors of both these corporations were in the main the same, and that they could not, therefore, make a valid contract for the reinsurance designed ; and also, that as the Home Insurance Company was a New Jersey corporation, and had not complied with the laws of this State so as to be entitled to transact business within it, the agreement for the reinsurance was unauthorized and void. But these objections cannot afford the plaintiff the assistance expected to be derived from them because the Home Insurance Company never resisted its liability on either of those grounds. It actually executed and performed the agreement made by promptly paying all losses arising on the risks reinsured by it, amounting, as it has been proved and found, to several thousand dollars. And after such a consummation the consideration could not be recovered back, because the obligation might have been, but in fact was not, repudiated as unlawful. The agreement made has been fully performed on both sides, and for that reason cannot be rescinded as unauthorized, or because it was made by persons incapable of representing both the corporations at the same time. The law would not enforce such an agreement as long as it remained

executory, neither will it annul it after it has been completely performed. The directors, consequently, cannot be held liable on the ground taken.

It was found as facts that the Home Insurance Company, at the city of New York, agreed to and did reinsure the risks to be taken by it, and then received the $40,000 paid for it. But as the resolution accepting the proposition made was adopted at a meeting of its directors, at Jersey City, according to a subsequent finding of fact, that must be regarded as having been so far qualified as to include only the formal agreement for reinsurance and the receipt of the consideration for it. Whether that would be a violation of the laws of this State imposing certrain restraints upon foreign insurance companies, it is not necessary now to determine, for the reason already given. And besides that, the defendants were not held to be liable in this action for violating either of those provisions of the laws. Their liability was placed upon the fact that they had, by providing for the reinsurance, transferred a portion of the effects of the New Amsterdam Insurance Company, when it was insolvent and contemplated insolvency, with the intent to give a preference to one class of policyholders over all others; and the case must now be considered and disposed of under that view of their responsibility.

When the proposition and agreement were made for the reinsurance, the New Amsterdam Insurance Company had, in fact, become insolvent by means of the losses incurred in Chicago, but while that was evidently feared it was not then known to its officers or directors. They had previously endeavored to secure information of their extent, but were unable to do so until about the 8th of November, 1871, Before that time, and on the twelfth of the preceding October, a resolution was adopted, at a meeting of the board of directors, declaring that if the Chicago losses should not exceed the amount of the capital and surplus of the company, over and above reinsurance, and excluding a certain lease, that the stock of the company should be filled up by the stockholders, *pro rata*, to any amount required for that purpose; and an agreement was executed by directors and stockholders, able and willing to perform it, to pay such amounts as might be required to fill up or restore the stock of the company.

It was under these circumstances, and without any knowledge of the extent of the Chicago losses, that the resolution was adopted and carried into effect for the reinsurance of the policies issued at the company's office; and that, as was found by the learned judge, was done to allay the distrust and alarm of the holders of the company's policies, occasioned by the fire at Chicago, and because of the difficulty experienced in ascertaining the extent of its losses. And in doing that all the acts and proceedings of the advisory committee, and of the directors themselves, were found to have been done and taken in good faith, and in the belief that they were lawful and proper, and for the best interests of the corporation, and not prejudicial to its policy-holders and creditors. These conclusions of fact were stated when the case was settled, but they are not inconsistent with the one · contained in the decision, that the agreement and payment for the reinsurance were made in contemplation of insolvency, and with the intent and understanding that the company might and would compromise with its creditors, particularly including the holders of the policies in Chicago. The facts shown justify the conclusion that the directors had enough before them, without ascertaining the precise extent of the losses encountered in Chicago, to induce the apprehension that the company would be found to have been rendered insolvent by them. The fire had been one incomparably disastrous, and it is a notorious fact that the insurance companies throughout the country distrusted their ability to withstand its consequences. In the case of this company, the local holders of its policies had become alarmed concerning their security under them, and the same sentiment evidently actuated its directors and officers; for without it they would not have been inclined to seek refuge from the result which could then be reasonably anticipated, by the expedient of reinsuring the large amount of policies designed to be protected in that manner, and taking the proceedings they did for filling up the stock of the company. These circumstances very clearly indicated the expectation that the company would prove, as it finally did, to be wholly insolvent. For that reason, apparently, a positive obligation to fill up the stock of the company was neither proposed nor entered into. It merely went so far as to bind the parties subscribing the agreement to perform it, in case the losses of the company at Chicago

should not exceed the capital and surplus over and above reinsurance, and excluding its lease. If the losses exceeded that amount, then the obligation to fill up the stock failed to be binding on account of the condition, subject to which it was expressly entered into. And it was feared such would prove to be the fact. That is evident from the preamble preceding the resolution for the reinsurance of the local policies. For by that it was stated that the reinsurance should continue only "until such time as a satisfactory adjustment" of the Chicago losses could be made; and that contemplated the inability of the company to fully pay them, and the probability that a compromise of some kind would become necessary to adjust them. As experienced business men, the directors, by their conduct, betrayed their conviction that the company would be found incapable of discharging its losses by payment, and that a compromise would be a necessary expedient, and that rendered it evident that insolvency, though not then really known, was actually contemplated. It was feared and anticipated as an immediately impending event from what, at the time, was known to have transpired, and under the belief that this was probable, the measures complained of were taken to reinsure the local risks; and the fact that they were adopted, as the learned judge found they were, without information of the extent of the Chicago losses, to allay the fears of the holders of other policies in good faith, and with the belief that the acts performed were lawful and proper for the best interests of their company, and not prejudicial to the holders of the policies and its creditors, are not inconsistent with the important circumstance also found that they were taken in contemplation of the company's insolvency. The directors could very well entertain these convictions and be actuated by these motives, and at the same time design to protect the holders of the policies to be reinsured, because they believed that the company would, in the end, prove to be insolvent. If they had no such apprehension, and did not believe that would probably be found to be its condition, there could have been no sound reason for parting with $40,000 of the company's money to procure reinsurance of about ten millions of its local risks, as the evidence showed was done by its directors. Their conduct cannot very well be reconciled with any other construction of their design. The court has found, as the evidence proved, that the agreement

and the payment for the reinsurance were made with the understanding, that the company might and would compromise its Chicago losses, and then resume the policies made the subject of the reinsurance. It was an expedient for their preservation and control until the contemplated emergency could be met, and if thât should successfully be disposed of, then for their resumption by the company, whose business in that event could be afterward continued. And that, it was found, was taken in contemplation of the company's insolvency. While the motives of the defendants were in some respects probably commendable, they did, nevertheless involve themselves in a violation of the provisions of the statute designed to secure equality among the creditors of the company. Their act did give the holders of its local policies a preference in the payment of the losses they might sustain, over those whose property had been insured and destroyed in Chicago, and by doing it they correspondingly diminished the fund applicable alike to the payment of all losses. If that could be lawfully done then there would be nothing to hinder an insurance company that had sustained heavy losses, from parting with all its available means to secure the reinsurance of other policies, in case it had issued a sufficient number to require the investment. It would allow the company to deprive itself of the power of paying one class of its creditors for the mere purpose of adding to the security of the others. And that, it was the design of these provisions of the statute to prevent. By appropriating and paying the $40,000 for the payment of the premiums of the reinsurance, the directors must have known that they were doing it for the purpose of preferring the holders of one class of policies to the holders of the others. And their conduct indicates that they were at the time convinced that the company was probably insolvent, and that its insolvency would be discovered as soon as its Chicago losses should be ascertained. They intended to do precisely what was accomplished, which was, to give one class of creditors a preference over the others. The reinsurance could have been provided for with no other design. If that had not been the case it would have been extended so as to include all the policies of the company. And if that design had not controlled the directors' action the reinsurance clearly would not have been made. What they did, violated the statute, which was enacted for

the purpose of securing equality among all the creditors of insolvent corporations (*Brouwer* v. *Harbeck*, 5 Seld., 589), as well as their obligations as trustees for all who were entitled to be protected by a just administration of its assets. (*Butts* v. *Wood*, 37 N. Y., 317; *Jackson* v. *Ludeling*, 21 Wallace, 616.) And that they did so in good faith, and under the belief that they were acting for the best interests of the corporation and not prejudicial to the holders of its policies, or to its creditors, cannot afford them protection against liability for their conduct. That has not been made to depend upon their motives, but upon their acts and the intent accompanying them. When they result in transferring the property, or effects of the corporation, or any part of it, for the purpose of giving a preference to any particular creditor or creditors, over the others, at a time when it has become insolvent, or its insolvency is contemplated as an impending fact, the liability of the directors making and assenting to it has been declared by the statute, and they cannot be exonerated from it, because their motives may, as they were in the present instance, be free from any positively bad intentions. They intended to do precisely what their acts accomplished, and that violated the provisions and restraints of the statute, prescribing what they should not do under the circumstances which had arisen. But while they were justly held to have rendered themselves liable, it did not follow that they should be held answerable for the full amount paid by the company for the reinsurance. That was not necessarily the measure of their liability. The statute, in terms, limited it by " the full extent of any loss the creditors and stockholders may respectively sustain from such violation." (2 R. S. [5th ed.], 519, § 10.) The judgment recovered in this case exceeded that, because it was shown that losses to the amount of several thousand dollars had been paid upon the reinsured policies by the Home Insurance Company. To the extent that those losses would have diminished the assets of the company if the reinsurance had not been made, the defendants were entitled to their benefit in ascertaining the amount of their liability. For, so far, the creditors sustained no loss by the act of reinsurance. The defendants are not to be subjected to the necessity of making a claim on this account against the assets in the receiver's hands, for

the reason that under the provision of the statute it cannot be included in the amount recovered against them.

Its inclusion would render the recovery more than the loss actually sustained, and that the statute has not permitted.

The plaintiff, as receiver, represents all the creditors, and all other persons interested in any form, in the assets of the company, and he was the proper person to prosecute the present action. The case was rightly disposed of, except as to the extent of the recovery, and to rectify the error in that respect the judgment should be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff can and will stipulate to deduct such sum from the recovery as will limit it to the actual loss sustained. If that shall be done, and a stipulation given to that effect within twenty days after notice of the decision, then, as so modified, the judgment should be affirmed, without costs of the appeal.

DAVIS, J.:

I concur. It should be indicated in the order that the amount to be deducted under the stipulation, is the sum which the receiver would have been obliged to pay to the holders of policies under which losses have been sustained and paid, and not the whole amount of such losses.

BRADY, J., concurs.

Judgment reversed, new trial ordered, costs to abide event, unless plaintiff can and will stipulate to deduct such sum from the recovery, as will limit it to the actual loss sustained. If that shall be done, and a stipulation given to that effect within twenty days after notice of the decision, then, as so modified, judgment affirmed, without costs of appeal.